IN THE UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF MISSOURI

| | |
|---|---|
| IN RE:<br><br>NOBLE HEALTH REAL ESTATE, LLC,<br><br>Debtor. | Case No.: 23-20051-drd11<br>Chapter 11 |
| JEANETTE QUINN, on behalf of herself and a class of similarly situated former employees,<br><br>Plaintiff,<br><br>vs.<br><br>NOBLE HEALTH REAL ESTATE, LLC,<br><br>Defendant. | Case No.<br><br>Class Action<br><br>Jury Trial Demanded |

COMPLAINT TO RECOVER MONEY OR PROPERTY
AND FOR DECLARATORY JUDGMENT

COMES NOW Jeanette Quinn, on behalf of herself and a class of similarly situated persons ("Former Employees"), priority unsecured creditors, by and through her undersigned attorneys of record for their Complaint to Complaint to Recover Money or Property from Debtor Noble Health Real Estate, LLC ("Debtor") and states as follows:

JURISDICTION & VENUE

1. This is an action to recover money or property from the Debtor and for declaratory judgment.

2. This Court has jurisdiction over the matter pursuant to 28 U.S.C. §§ 157 and 1334.

3. This is a core proceeding under 28 U.S.C. § 157.

4. Venue is proper in this Court and in this District under 28 U.S.C. §§ 1408–09.

5. Ms. Quinn consents to this Court entering a final judgment in this proceeding.

6. Ms. Quinn demands trial by jury on all claims so triable.

## SUMMARY OF THE CLAIMS

7. This action arises from the financial meltdown of the Audrain Medical Center in Mexico, Missouri and the Callaway Community Hospital in Fulton, Missouri along with the seven rural health clinics associated with those facilities operated by Noble Health Corporation and its various subsidiaries and related entities ("the Medical System").

8. During this meltdown, the Medical System (1) withheld insurance premiums that were not paid into employee benefit plans resulting in both converted funds and the incursion of more than a million dollars in medical bill claims that should have been covered by medical insurance; (2) failed to pay earned wages to its employees; and (3) failed to pay accrued paid time off.

9. The Former Employees worked for the Medical System providing health care related services at the health care facilities owned and operated by the Medical System in Audrain and Callaway Counties, including but not limited to the Callaway Community Hospital and the Audrain Community Hospital (hereinafter, "the Hospitals").

10. Beginning in late 2021 and continuing into 2022, the Medical System made payroll withholding for various insurance benefits but failed to pay those withheld premiums over to the appropriate insurance vendors. Instead, the Medical System used that money for the payment of other bills of the Medical System.

11. The Medical System then missed several pay periods in 2022 wherein the Medical System failed to make promised wage payments to its workers. In or around March 2022, the Medical System announced they were closing the Hospitals. And around that time, the Medical System furloughed many of its workers without making final wage payments.

12. The Medical System's mismanagement has been subject to widespread reporting.[1]

13. This adversary proceeding is brought as a class action pursuant to Fed. Rule of Bank. Proc. 7023 and Fed. R. Civ. Proc. 23 to recover damages owed to Ms. Quinn and other similarly situated individuals employed by the Medical System in the state of Missouri.

## PARTIES

14. Ms. Quinn is a licensed pharmacist. She was employed by Debtor in Fulton, Missouri. She claims unpaid wages, health insurance, premiums, and other damages.

15. Ms. Quinn is an "employee" under the MMWL.

16. As indicated on Debtors' Amended Schedules, the Medical System operated under many entities and has been bought and sold multiple times since closing.

---

[1] *See* Sarah Jane Tribble, *Buy and Bust: Collapse of Private Equity-Backed Rural Hospitals Mired Employees in Medical Bills, KHN* (Aug. 16, 2022), https://khn.org/news/article/noble-health-private-equity-rural-hospitals-missouri-employees-medical-bills/#:~:text=Buy%20and%20Bust%3A%20When%20Private,it%20put%20patients%20at%20risk (last accessed Jan. 5, 2024); Sarah Jane Tribble, *Buy and bust: when private equity came for two rural Missouri hospitals*, STLPR (June 19, 2022), https://news.stlpublicradio.org/health-science-environment/2022-06-19/buy-and-bust-when-private-equity-came-for-two-rural-missouri-hospitals (last accessed Jan. 5, 2024).

17. Debtor is, and was at all times relevant, a Missouri limited liability company and a citizen of the State of Missouri. One hundred percent (100%) of the membership interest in Debtor is, and was at all times relevant, owned by Noble Health Corporation.

18. Noble Health Corporation is, and was at all times relevant, a Missouri Corporation with its principal place of business in the State of Missouri.

19. Noble Health Corporation owned one hundred percent of the membership interest in four Missouri limited liability companies from 2021 until in or about March, 2022. Those were (1) Noble Health Real Estate, LLC, (2) Noble Health Real Estate II, LLC, (3) Noble People LLC f/k/a Noble Health People LLC, and (4) Noble Health Management LLC. It also fully managed three Missouri nonprofit corporations, (1) Noble Health Audrain, Inc.; (2) Noble Health Fulton, Inc.; and (3) Noble Health Foundation (all collectively, "the Noble Health entities")

20. in late March, 2022 a reorganization may have been conducted to move Noble Health Management LLC and Noble Health People LLC under a new corporation, Noble Health Services, Inc. There is no indication any value was given for these transfers. Rather, the Former Employees believe these to have been sham transfers made in an effort to separate liability for the then-imminently missed payrolls from the primary assets of Noble Health Corp., i.e., the real estate held in the names of Noble Health Real Estate, LLC and Noble Health Real Estate II, LLC, both currently Chapter 11 debtors in bankruptcy.

21. The Noble Health entities were managed and functioned as a single enterprise—all of their activities were related, all operations were unified under common control, and all entities shared the common business purpose of operating the Medical System.

22. The Noble Health entities combined their income and expenses as a single enterprise to obtain millions of dollars from the United States government. Specifically, Debtors' affiliate Noble Health People LLC received two credits: $734,032.24 that was applied to other unpaid taxes, and $2,782,784.30, of which $210,781.62 was applied to other taxes and $2,426,271.77 was paid by the IRS to Noble Health People LLC, an ostensible employment entity that has had few, if any employees, for more than a year. These payments were received earlier this year, well after the current ownership group took control.

23. To the extent there remained any legal distinction between the Noble Health entities, they each had an equal voice and equal right of control over the shared enterprise of the Medical System as related to the operation of the Hospitals.

24. To the extent there remained any legal distinction between the Noble Health entities, they came together to operate a singular enterprise for profit.

25. To the extent there remained any legal distinction between the Noble Health entities, they used their nominally individual resources with the intention to produce profits for the shared enterprise.

26. To the extent there remained any legal distinction between the Noble Health entities, they shared in the profits and expenses of the shared enterprise collectively.

27. The interactions, organizations, actions, and omissions of Noble Health Corporation and its subsidiaries resulted in them forming a joint venture, de facto partnership, or both.

28. Noble Health Corporation, and its owners, exercised control, not mere majority or complete stock ownership, but complete domination of finances, policy and

business practice related to the payment of the Former Employees and the conversion of their non-wage employee benefits.

29. Noble Health Corporation, and its owners' control was used to commit fraud or wrong, to perpetrate the violation of a statutory or other positive legal duty or dishonest or unjust actions in contravention of the Former Employees' legal rights to their wages and non-wage employee benefits.

30. Noble Health Corporation, and its owners' control proximately caused the injury or unjust loss to Ms. Quinn and the Former Employees.

31. Noble Health Corporation and each of the Noble Health entities each had, and continue to have common directors or officers.

32. Noble Health Corporation financed, and continues to finance, each of the Noble Health entities.

33. Noble Health Corporation, its owners, directors, and officers caused the organization of each of the Noble Health entities.

34. Each of the Noble Health entities operated with grossly inadequate capital.

35. Noble Health Corporation paid the salaries and other expenses or losses of the Noble Health entities.

36. The limited liability companies owned by Noble Health Corporation (Noble Health Real Estate, LLC, Noble Health Real Estate II, LLC, Noble People LLC f/k/a Noble Health People LLC, and Noble Health Management LLC) had substantially no business except with Noble Health Corporation and no assets except those conveyed by the Noble Health Corporation.

37. Each of the Noble Health entities, including Debtor, was described or treated as a department or division of Noble Health Corporation.

38. When managers of the Medical System collected the debts of the Medical system, all of the Noble Health entities' liabilities were tracked and referred to as a unitary set of liabilities. This is illustrated by Debtor's own Schedule H which lists the various Noble Health entities as co-debtors.

39. Noble Health Corporation used the property of each of the Noble Heath entities, including Debtor's as its own.

40. The governing body of Debtor did not act independently but rather took orders from Noble Health Corporation in the interest of the Medical System.

41. The legal requirements of a limited liability company were not observed by Debtor and the other Noble Health entities. Specifically, each of the Noble Health entities have failed to maintain a registered agent at all times relevant.

42. In December 2022, the Pasture Medical Group closed an equity of purchase of the Hospitals' operation whereby the Pasture Medical Group assumed the assets and liabilities of the Medical System ("the Acquisition").

43. At the time of the Acquisition, Pasture Medical Group knew, or through the exercise of reasonable care should have known, that the Medical System owed unpaid wages and benefits to its employees.

44. Pasture Medical Group carried out the Acquisition for the purpose of continuing the business of the Medical System in operating the hospitals at the same locations, with the same equipment, and with at least some of the same staff.

45. If recovery cannot be had in these bankruptcy proceedings, then it is possible that the Former Employees' claims will be extinguished by virtue of the various corporate sales without any recovery, even though the new ownership group will continue operation of the Medical System at the same locations, using much of the same equipment, and many of the same employees.

## GENERAL ALLEGATIONS

46. Ms. Quinn was employed by the Medical System as a pharmacist beginning in April 2020.

47. The Former Employees worked for the Medical System at the Hospitals from 2021 until the Medical System ceased operations on September 9, 2022.

48. During the COVID-19 pandemic, the Medical System received millions of dollars in federal covid relief funds, including paycheck protection programs.

49. From the beginning of September, 2021 until December 31, 2021, the Medical System made deductions from employees' pay for insurance benefits but did not use those funds to pay premiums. This resulted in roughly $800,000 of insurance claims going unpaid.

50. Even when the Medical System started a new self-funded plan at the beginning of 2022, it continued to collect premiums but did not provide insurance coverage.

51. In sum, $1,148,780 in insurance claims went unpaid due to the Medical System's failure to secure insurance with the funds withheld from employees for that purpose.

52. By 2022, the Medical System faced numerous lawsuits alleging they failed to pay its bills.

53. In the early spring of 2022, three payrolls were missed: April 1, April 15, and April 29.

54. Certain employees also went unpaid in May and June of 2022.

55. Beginning on August 19, 2022, the Medical System missed the first of its next three, and final, payrolls.

56. All of the employees who went unpaid as described above were subject to the same Medical System-wide policy and decision. That is, this was not a situation where some people were getting paid but others not. The same was true for "insurance benefits that were withheld, but not passed on to the appropriate vendors."

57. Finally, paid time off was a benefit offered by the Medical System.

58. The Medical System's policy was that unused PTO was paid out to employees upon their separation from the Medical System.

59. None of the Former Employee were paid their PTO balances when they were let go.

60. Over 440 Former Employees of the Medical System have suffered unpaid wages, benefits, interest, and liquidated damages related to the Medical System's failure to pay any wages (or benefits) to its employees during certain workweeks.

61. Ms. Quinn and the Former Employees still have not been paid the back wages owed to them.

## CLASS ACTION ALLEGATIONS

62. Ms. Quinn brings this action on behalf of a class of all those similarly situated and defined as follows:

> Persons who are currently working or previously worked for the Medical System and did not receive pay for time they worked in 2022 or for whom the Medical System did not pay health insurance premiums in 2021 or 2022.

63. The Former Employees' claims satisfy the numerosity, commonality, typicality, adequacy, and superiority requirements of a class action pursuant to Rule 23.

64. The class is so numerous that joinder of all class members in a single action is impracticable in that the class is comprised of more than 400 people. Class members may be informed of the pendency of this action through direct mail, email, publication, or other practical methods.

65. There are questions of fact and law common to the class that, under Missouri law, predominate over any questions affecting only individual members. Those questions of law and fact common to the class arising from the Medical System's actions include, without limitation, the following:

a. Whether the Medical System violated the MMWL by failing to pay all earned wages to its employees;

b. Whether the Medical System failed to pay the statutorily prescribed minimum wage under the MMWL to its employees; and

c. Whether the Medical System's failure to pay wages and insurance premiums breached its contracts with Ms. Quinn and the Former Employees;

d. Whether the Medical System failure to pay wages and health insurance premiums resulted in it being unjustly enriched;

e. Whether the Medical System misappropriated insurance premiums withheld from employee pay; and

f. Whether Debtor is liable for the damages sustained by Ms. Quinn and the Former Employees.

66. The questions set forth above predominate over any questions affecting only individual persons, and a class action is superior with respect to considerations of consistency, economy, efficiency, fairness, and equity to other available methods for the fair and efficient adjudication of the claims.

67. A class action is the appropriate method for the fair and efficient adjudication of this controversy. The Medical System acted or refused to act on grounds generally applicable to the class. The presentation of separate actions by individual class members could create a risk of inconsistent and varying adjudications, establish incompatible standards of conduct for the Medical System, and substantially impair or impede the ability of class members to protect their interests.

68. Ms. Quinn is an adequate representative of the class because she is a member of the class and her interests do not conflict with the interests of the members of the class she seeks to represent. The interests of the members of the class will be fairly and adequately protected by Ms. Quinn and her undersigned counsel. Undersigned counsel is experienced in the litigation of civil matters, including the prosecution of complex wage and hour, employment, and class action cases.

69. Maintenance of this action as a class action is a fair and efficient method for adjudication of this controversy. It would be impracticable and undesirable for each member of the class who suffered harm to bring a separate action. In addition, the maintenance of

separate actions would place a substantial and unnecessary burden on the courts and could result in inconsistent adjudications, while a single class action can determine, with judicial economy, the rights of all class members.

## COUNT I – VIOLATION OF MISSOURI MINIMUM WAGE LAW

70. Ms. Quinn and the Former Employees re-allege and incorporate by reference the allegations set forth in paragraphs 1 through 67 as though fully set forth herein.

71. The Medical System violated Missouri law, in relevant part, by failing to pay wages at or greater than the minimum wage rate as required by Mo. Rev. Stat. § 290.502.

72. Ms. Quinn and the Former Employees are entitled to recover these minimum wages along with an amount of liquidated damages equal to two times their compensatory damages, attorney's fees, and costs, pursuant to Mo. Rev. Stat. § 290.527. Debtor is jointly and severally liable for these damages.

## COUNT II – BREACH OF CONTRACT

73. Quinn and the Former Employees re-allege and incorporate by reference the allegations set forth in paragraphs 1 through 67 as though fully set forth herein.

74. Ms. Quinn and the Former Employees and the Medical System entered into contracts whereby the Medical System agreed to pay wages and provide health insurance in exchange for Ms. Quinn and the Former Employees' work.

75. This mutual exchange was supported by sufficient consideration.

76. The Medical System failed to pay wages and provide health insurance.

77. Accordingly, the Medical System breached its contracts.

78. The Medical System failed or refused to remedy its breach and, as a result, Ms. Quinn and the Former Employees have sustained damages, including contractual damages and consequential damages. Debtor is jointly and severally liable for these damages.

COUNT III – UNJUST ENRICHMENT

79. Ms. Quinn and the Former Employees re-allege and incorporate by reference the allegations set forth in paragraphs 1 through 67 as though fully set forth herein.

80. Ms. Quinn and the Former Employees conferred a benefit upon the Medical System in the form of their labor.

81. The Medical System accepted and retained these benefits. The Medical System knowingly benefited from its unjust conduct—at Ms. Quinn's and the Former Employees' expense—by failing to pay wages earned and health insurance premiums for their labor.

82. The Medical System was aware or should have been aware that it was receiving benefits from Ms. Quinn and the Former Employees at the time they accepted and retained those benefits.

83. The Medical System's acceptance and retention of these benefits was unjust and inequitable and resulted in the Medical System being unjustly enriched.

84. Equity cannot in good conscience permit the Medical System to retain the benefits derived from Ms. Quinn and the Former Employees through its unjust and unlawful acts without paying for said benefits. Debtor is jointly and severally liable for the value of this unjust enrichment.

85. In the event Ms. Quinn and the Former Employees do not prevail on their other counts, they are without an adequate remedy at law.

COUNT IV – MO. REV. STAT. § 430.360

86. Ms. Quinn and the Former Employees re-allege and incorporate by reference the allegations set forth in paragraphs 1 through 67 as though fully set forth herein.

87. The Medical System failed to pay wages due to Ms. Quinn and the Former Employees on or before the fifteenth day of the month for the full amount of all wages earned previous to the first day of that month.

88. Pursuant to Mo. Rev. Stat. § 430.360(2), Ms. Quinn and the Former Employees are entitled to interest on these late payments at the rate of six percent when recovered. Debtor is jointly and severally liable for these damages.

89. Pursuant to Mo. Rev. Stat. § 430.360(4), the Medical System is to Ms. Quinn and the Former Employees, for the amount of all loss and damages occasioned by it unlawfully withholding the money as described above. Debtor is jointly and severally liable for these damages.

90. As a result of the Medical System unlawful withholding of wages, Ms. Quinn and the Former Employees had to use money from savings and other sources to meet its financial obligations which otherwise would have been met through her steady paycheck. Additionally, Ms. Quinn and the Former Employees were unable to take advantage of certain opportunities because of the shortfall in their expected regular wages.

COUNT V – CONVERSION

91. Ms. Quinn and the Former Employees re-allege and incorporate by reference the allegations set forth in paragraphs 1 through 67 as though fully set forth herein.

92. During the time periods that the Medical System withheld insurance premiums but did not pass those premiums on to the Medical System's insurance vendors, the Medical System obtained possession of Ms. Quinn and the Former Employees' money that was allocated by prior agreement and course of conduct to be paid to those insurance vendors to provide various insurance benefits to Ms. Quinn and the Former Employees.

93. When it failed to pay the withheld premiums to its insurance vendors, the Medical System took possession of Ms. Quinn's and the Former Employees' money and exercised control over that money beyond that use authorized by Ms. Quinn and the Former Employees.

94. As a result of its use of their money, the Medical System deprived Ms. Quinn and the Former Employees of their right to possession of their money.

95. As a result of the Medical Systems misappropriation of the withheld premiums, Ms. Quinn and the Former Employees have been damaged. Debtor is jointly and severally liable for these damages.

COUNT VI – MONEY HAD AND RECEIVED

96. Ms. Quinn and the Former Employees re-allege and incorporate by reference the allegations set forth in paragraphs 1 through 67 as though fully set forth herein.

97. During the time periods that the Medical System withheld insurance premiums but did not pass those premiums on to the Medical System's insurance vendors, the Medical System obtained possession of Ms. Quinn and the Former Employees' money that was allocated by prior agreement and course of conduct to be paid to those insurance vendors to provide various insurance benefits to Ms. Quinn and the Former Employees.

98. The withheld premiums should have been held in trust by the Medical System for the provision of insurance benefits.

99. The Medical System did not act properly as the trustee of the withheld premiums and thereby misappropriated those funds.

100. The Medical System appreciated the benefit it received by withholding those premiums and used that money to pay other bills of the Medical System.

101. The Medical System's acceptance and retention of the withheld premiums is unjust.

102. As a result of the Medical Systems misappropriation of the withheld premiums, Ms. Quinn and the Former Employees have been damaged. Debtor is jointly and severally liable for these damages.

WHEREFORE, Ms. Quinn and the Former Employees demand judgment against Debtor and pray the Court:

a. Certify the claims asserted herein as a class action pursuant to Rule 23;

b. Declare the Medical System's failure to pay for all wages earned unlawful;

c. Declare Debtor jointly and severally liable with the other Noble Health entities for the claims stated herein;

d. Award Ms. Quinn and the Former Employees compensatory damages and consequential damages;

e. Award Ms. Quinn and the Former Employees liquidated damages under Mo. Rev. Stat. § 290.527;

f. Award Ms. Quinn and the Former Employees pre-judgment and post-judgment interest as provided by law;

g. Award Ms. Quinn and the Former Employees attorney's fees and costs as allowed by Mo. Rev. Stat. § 290.527; and

h. Award Ms. Quinn and the Former Employees such other relief as the Court deems fair and equitable in the premises.

DEMAND FOR JURY TRIAL

Ms. Quinn hereby demands a jury trial on all issues so triable.

Respectfully submitted,

LEAR WERTS LLP

Todd C Werts

Todd C. Werts, MO Bar # 53288
103 Ripley Street
Columbia, MO 65201
Telephone: 573-875-1991
Facsimile: 573-279-0024
Email: werts@learwerts.com

ATTORNEYS FOR JEANETTE QUINN AND THE CLASS SHE SEEKS TO REPRESENT